IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:21-CV-1-RJ

GHALIB GREEN,

        Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-22, -25] pursuant to Fed. R. Civ. P. 12(c). Claimant Ghalib Green ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded to Defendant's motion, and the time for filing a reply has expired. [DE-28]. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on September 25, 2018, alleging disability beginning September 11, 2018. (R. 20, 160-66). His claim was denied initially and upon reconsideration. (R. 20, 70-94). A hearing before the Administrative Law Judge

("ALJ") was held on December 2, 2019, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 20, 37–63). On February 6, 2020, the ALJ issued a decision denying Claimant's request for benefits. (R. 17–36). Claimant then requested a review of the ALJ's decision by the Appeals Council, (R. 157–179), and submitted additional evidence as part of his request, (R. 13–16). The Appeals Council found the evidence did not show a reasonable probability that it would change the outcome of the decision, so it did not exhibit the evidence and denied Claimant's request for review on November 2, 2020. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R.

2

§ 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

3

In this case, Claimant alleges the following errors: (1) the Appeals Council erred in failing to evaluate and consider the VE rebuttal evidence; (2) the ALJ erred by failing to articulate how she considered the July 3, 2019 letter from Claimant's cardiologist, Dr. Rogers; and (3) the structure of the Social Security Administration is not constitutionally valid. Pl.'s Mem. [DE-23] at 6–12.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since September 11, 2018, the alleged onset date. (R. 23). Next, the ALJ determined Claimant had the following severe impairments: congestive heart failure, coronary artery disease, hypertension, myocardial infarction, obstructive sleep apnea, and obesity. *Id.* The ALJ also found Claimant had nonsevere impairments of hyperlipidemia and depression with anxiety. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24–26). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 23–24).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring the following limitations:

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work,

4

> [T]he claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday. He requires the flexibility to alternate between sitting, standing, and walking within a 30-minute timeframe without leaving work tasks. He needs an assistive device for standing and walking. He can have occasional exposure to fumes, odors, dusts, gases, poor ventilation, and hazards.

(R. 26–32). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence. (R. 27). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a tractor trailer truck driver. (R. 32). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 32–33).

## V. DISCUSSION

### A. Letter from Claimant's Cardiologist Dr. Rogers

Claimant contends that the ALJ erred in failing to articulate how she considered the opinion of Claimant's cardiologist, Dr. Rogers. Pl.'s Mem. [DE-23] at 8–11. Claimant argues that under the new regulation, the ALJ was required to articulate the persuasiveness of Rogers' medical opinion, and, here, did not do so, improperly ruling that the opinion was "inherently neither valuable nor persuasive" as an issue reserved to the Commissioner. *Id.* at 8–9. Defendant argues that the ALJ correctly evaluated Dr. Roger's statement as an issue reserved to the Commissioner. Def.'s Mem. [DE-26] at 25–28.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Because Claimant protectively filed his application on or after March 27, 2017,

---

unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

20 C.F.R. § 404.1520c governed how the ALJ considered the medical opinions in Claimant's case. The applicable regulation provides the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency. *Id.* § 404.1520c(a). The regulation also requires the ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* § 404.1520c(b).

Further, "[t]he judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability. . . . [T]he overall RFC assessment is an administrative finding on an issue reserved to the Commissioner." S.S.R. 96-5p, 1996 WL

6

374183, at *5 (July 2, 1996); *see Slaydon v. Saul*, No. 7:18-CV-54-FL, 2019 WL 3660573, at *5 (E.D.N.C. Aug. 6, 2019). "Medical source opinions on issues reserved to the Commissioner are not entitled to any weight." *Watson v. Berryhill*, No. 5:17-CV-579-RJ, 2018 WL 6600209, at *1 (E.D.N.C. Dec. 17, 2018).

In this case, in a letter dated July 3, 2019, Claimant's cardiologist, Dr. Rogers, stated as follows:

> This letter is intended to support the disability claim of Ghalib Green. Mr. Green has a chronic systolic heart failure, a history of coronary artery disease with stents placed, and a history of ventricular arrhythmias with an automatic implantable cardioverter defibrillator. Mr. Green wore a halter monitor in January 2019 which demonstrated that 11% of his total ventricular beats were ventricular ectopy. His medications were titrated at that time. His last echocardiogram in June 2019 demonstrated an EF or heart function of 40% with a left ventricular end diastolic dimension of 6.6 cm. Mr. Green's last clinic visit was in June 2019. At that time, he remained physically limited on a daily basis due to symptomatic heart failure. He has fatigue, activity intolerance, and exertion dyspnea.
>
> Based on the above, Mr. Green has functional limitations that preclude him from work. He is being medically managed for heart failure with regular follow up and he will require medications for a lifetime.

(R. 374).

Here, Claimant argues that the ALJ and Defendant mischaracterize Dr. Rogers' statement. Pl.'s Mem. [DE-23] at 9. Claimant contends that Dr. Rogers' statement, that Claimant is limited physically and cannot work because of fatigue, activity intolerance, and exertion dyspea, is directly related to Claimant's testimony regarding breathing problems and napping during the day, Claimant's NYHA II classification, and additionally, the VE's hearing testimony about off-task time during the workday. *Id.* Specifically, Claimant argues that Dr. Rogers' statement "was not a statement that Green is 'disabled' without explanation, but rather it was a statement that his cardiac-related symptoms, specifically his fatigue, activity intolerance, and exertion dyspnea,

7

prevent him from being able to carry out the exertional requirements of full-time work." *Id.* This conflicts with the ALJ's RFC, Claimant states, regarding Claimant's being off task, needing extra breaks, and missing work. *Id.* Thus, Claimant continues, the ALJ needs to sufficiently explain how she considered Dr. Rogers' opinion on remand. Claimant cites *Rhodes v. Berryhill*, where the court ruled that the ALJ did not sufficiently explain the weight given to a state psychological consultative examiner and, thus, did not "show his work." No. 5:16-CV-674-FL(2), 2017 WL 2303514, at *4 (E.D.N.C. May 10, 2017), *report and recommendation adopted*, 2017 WL 2303505 (E.D.N.C. May 25, 2017).

Defendant argues, conversely, that the ALJ still considered Dr. Rogers' letter on three different occasions: (1) as evidence related to Claimant's cardiac history, (R. 29), (2) alongside other evidence to conclude Claimant could perform light work, (R. 30), and (3) to conclude that Dr. Rogers' conclusions regarding functional limitations precluding Claimant from work was an issue reserved to the Commissioner, (R. 31). Def.'s Mem. [DE-26] at 26. Defendant cites *Footman v. Saul*, where, under the new regulations, that court concluded that the ALJ properly considered the supportability and consistency of a medical opinion, but also disregarded parts of that opinion which stated that the Plaintiff lacked the ability to work, as a matter reserved to the Commissioner. No. 1:19CV1200, 2020 WL 6728937, at *11 (M.D.N.C. Nov. 16, 2020).

The ALJ, here, as Defendant states, did note Dr. Rogers' July 3, 2019 letter, (R. 374), several times in her decision. The ALJ mentioned Rogers' letter in discussing Claimant's various cardiac-related issues. (R. 29). The ALJ noted the letter's statement that Claimant's echocardiogram in June 2019 showed an improved ejection fraction to 40 percent. (R. 30). Finally, the ALJ discussed Rogers' letter regarding medical opinion persuasiveness. (R. 31). Again, in the medical opinion section of her decision, the ALJ summarized much of the letter concerning

8

Claimant's heart related medical history—that the Claimant has chronic systolic heart failure, a history of coronary artery disease with stents placed, a history of ventricular arrhythmias with an automatic implantable cardioverter defibrillator; that Claimant wore a Holter monitor in January 2019, demonstrating that 11 percent of his total ventricular beats were ventricular ectopy; Claimant's medications were titrated at the time; Claimant's echocardiogram in June 2019 showed an ejection fraction or heart function of 40 percent with a left ventricular end diastolic dimension of 6.6 centimeters; Claimant's last clinic visit was in June 2019, and at that time he was physically limited daily due to symptomatic heart failure; and Claimant has fatigue, activity intolerance, and exertion dyspnea. *Id.* The ALJ then noted Dr. Rogers' statement, "[b]ased on the above, [Claimant] had functional limitations that preclude him from work," and that Claimant was being medically managed for heart failure with regular follow up, and would require medications for a lifetime. *Id.*; (R. 374). The ALJ then concluded that "the expressed statement that the claimant has functional limitations that preclude him from work is on an issue reserved to the Commissioner and, per the dictates of 20 CFR 404.1520b(c) and 20 CFR 416 920b(c), is deemed inherently neither valuable nor persuasive. As such the undersigned need not articulate how this evidence was considered in terms of persuasiveness." (R. 31).

Defendant seems to argue that the ALJ implicitly considered the supportability and consistency of the other portions of Dr. Rogers' letter, while explicitly doing so for the statement regarding Claimant's functional limitations precluding him from working, per 20 C.F.R. § 404.1520c, because the ALJ noted the letter on three occasions with other evidence. Def.'s Mem. [DE-26] at 26–27. Citing *Footman v. Saul*, Defendant appears to argue for the proposition that the ALJ properly considered the whole of Dr. Rogers' letter and then properly disregarded the statement regarding Claimant's functional limitations precluding work as a matter reserved to the

Commissioner. *Id.* at 27. However, the ALJ in the *Footman* case expressly noted which portions of the opinion were persuasive, in addition to noting the portions they found unpersuasive or reserved to the Commissioner. 2020 WL 6728937, at *10 (M.D.N.C. Nov. 16, 2020) ("The postural, manipulative, and environmental limitations are generally persuasive," but regarding "deficits to [the claimant's] concentration attention, and ability to handle stress due to depression," "[t]he extent of these limitations are not consistent with the evidence or record.").

Here, unlike in the *Footman* case, the ALJ did not articulate the persuasiveness of the other portions of Rogers' letter, aside from the statement that limitations precluded work. The ALJ simply summarized Rogers' notation of Claimant's medical history, but did not explain what was supportable (or not) or consistent (or not) regarding statements of Claimant's fatigue, activity intolerance, and exertion dyspnea, and being physically limited due to symptomatic heart failure. Further, Rogers' statements on Claimant's fatigue, activity intolerance, and exertion dyspnea, as Claimant argues, may contradict or be inconsistent with the ALJ's RFC finding that Claimant can carry out full-time work at the light exertion level—and that Claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and walk six hours in an eight-hour workday; with no limitation regarding off-task time, needing extra breaks, or missing work. (R. 26); *see Rhodes*, 2017 WL 2303514, at *4; *Ezzell v. Berryhill*, 688 F. App'x 199, 201 (4th Cir. 2017); *Nalley v. Saul*, No. 1:18-CV-00301-FDW, 2019 WL 6598221, at *5 (W.D.N.C. Dec. 4, 2019) ("In other words, when an ALJ gives weight to a consultative examiner's opinion, and when the ALJ implicitly rejects that opinion in the RFC assessment, the ALJ is required to explain the inconsistency.") (citing SSR 96-8p, 1996 WL 374184, at *7). The court notes that the new regulations regarding "persuasiveness" of medical opinions and the old regulations requiring "weighing" medical opinions consider the same factors. *See* 20 C.F.R. § 404.1520c; 20 C.F.R. §

10

404.1527(c).

"[T]here is no indication that the ALJ actually undertook the required analysis" of Dr. Rogers' statements. *Dowling v. Comm'r of SSA*, 986 F.3d 377, 385 (4th Cir. 2021). "The court must also be satisfied that "the decision was reached through the application of the correct legal standards," *Coffman*, 829 F.2d at 517, and it cannot "fill-in the gaps for the ALJ," that the other portions of Rogers' letter regarding evidence of Claimant's fatigue, activity intolerance, and exertion dyspnea may or may not be persuasive in support of the RFC. *Id.*; *Torres v. Colvin*, No. 1:15-CV-7-RLV, 2016 WL 54933, at *9 (W.D.N.C. Jan. 5, 2016). Thus, the court finds that remand is necessary for the ALJ to properly analyze the persuasiveness of Dr. Rogers' letter.

## B.    The VE Rebuttal Evidence

Claimant contends that the Appeals Council erred by failing to evaluate and consider Claimant's VE rebuttal evidence. Pl.'s Mem. [DE-23] at 6–8. Claimant argues that the rebuttal evidence—an opinion from another VE, Paula Day—indicated that Claimant could work at the sedentary level only, not light, which would likely have rendered Claimant disabled. *Id.* at 6; (R. 13–16). Further, Claimant argues, "[d]espite the outcome determinative nature of this evidence, the Appeals Council offered no articulation as to why this evidence was rejected," and the Appeals Council only stated that there was not "a reasonable probability that it would change the outcome of the decision." *Id.* Claimant states that while the Appeals Council is not required to articulate its reasoning for denying review, this newer evidence contradicts and undermines the VE testimony relied upon by the ALJ, and thus remand is necessary for proper consideration. *Id.* at 7–8.

Defendant, on the other hand, argues that the Appeals Council did consider the rebuttal evidence, but Claimant did not meet his burden of showing the evidence was new and material, and thus the Appeals Council was not required to detail their reasoning regarding that evidence.

11

Def.'s Mem. [DE-26] at 19–25.

The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93 (4th Cir. 1991). Evidence is "new" if it is not duplicative or cumulative. *Wilkins*, 953 F.2d at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* New and material evidence "need not have existed during [the relevant] period, but rather must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time." *Outlaw v. Colvin*, No. 5:11-CV-647-FL, 2013 WL 1309372, at * 2 (E.D.N.C. Mar. 28, 2013) (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). "Evidence may relate back to the period on or before the ALJ's decision even if it postdates the decision." *Shuman v. Berryhill*, No. 3:16-CV-62, 2017 WL 3476972, at *3 (N.D.W. Va. Aug. 14, 2017) (citation omitted). The court conducts a *de novo* review of whether the additional evidence was new and material. *See Coleman v. Berryhill*, No. 6:17-CV-2613-TMC, 2019 WL 850902, at *3 (D.S.C. Feb. 22, 2019); *Kiro v. Berryhill*, No. CV 18-89 SCY, 2019 WL 1331903, at *5 (D.N.M. Mar. 25, 2019) ("Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to our *de novo* review.").

Claimant bears the burden of demonstrating that the additional evidence is (1) new, i.e., not duplicative or cumulative of that which is already in the record, (2) material, i.e., would have changed the outcome of the ALJ's decision; and (3) relates to the claimant's medical condition as it existed at the time of the hearing. *Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 WL 4668343, at *5 (E.D.N.C. July 19, 2010), *report and recommendation adopted*, 2010 WL 4668312 (E.D.N.C.

12

Nov. 5, 2010) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b); *Wilkins*, 953 F.2d at 96 (citations omitted); *Eason v. Astrue*, No. 2:07-CV-00030-FL, 2008 WL 4108084, at *3 (E.D.N.C. Aug. 29, 2008) (citations omitted)).

In this case, Paula C. Day, a vocational expert and rehabilitation consultant, opined that "the jobs given by the expert witness in the 12/2/19 hearing are not consistent with the above RFC." (R. 13). Day disagreed that the jobs of garment sorter and x-ray inspector would allow the opportunity to alternate positions every 30 minutes. *Id.* She stated that she believed the national numbers for cashier II jobs would be greatly reduced due to the changing positions every 30-minutes limitation. *Id.* Day also stated that the need to utilize an assistive device for standing and walking would likely be considered an accommodation. Further, she wrote that "if an individual were expected to carry 10 lbs frequently while using a cane in the alternate hand, for 4–6 hours per day, it would seem unrealistic, as it could likely become a safety concern due to potential balance and instability issues." Finally, Day concluded that "[i]t is my opinion that this scenario would indicate that the individual would be limited to work at the Sedentary physical demand level only;" and "based on my experience with job placement and job analysis, at the Light physical demand level, the need for an assistive device would likely be seen as potential employers providing accommodations, which is not consistent with the definition of competitive employment." (R. 14).

Ultimately, here, the Appeals Council denied Claimant's request for review. (R. 1). Accordingly, the Appeals Council was not required to make findings of fact or explain its reasoning in determining that the new evidence would not change the outcome of the decision. *See Sutton v. Berryhill*, No. 5:17-CV-48-FL, 2017 WL 7053966, at *2 (E.D.N.C. Dec. 19, 2017), *adopted by* 2018 WL 576847 (E.D.N.C. Jan. 26, 2018) (when a claimant challenged the Appeals Council's

13

failure to consider additional evidence, the court held, "Here, the Appeals Council did not grant review, and therefore, it was not required to explain its reasoning for determining that the evidence submitted after the ALJ's decision did not warrant changing the ALJ's decision.").

Again, although the Appeals Council was not required to explain its reasoning, the court conducts a *de novo* review of whether the additional evidence was new and material. *See Coleman* 2019 WL 850902, at *3; *Kiro*, 2019 WL 1331903, at *5. Here, Claimant arguably has met his burden, though, as noted below, the consulting VE opinion may not change the result. *See Jacobs v. Colvin*, No. 7:13-CV-00184-RJ, 2015 WL 1471256, at *9 (E.D.N.C. Mar. 31, 2015).

First, Claimant has shown good cause for failing to submit the additional evidence earlier. The claimant has the responsibility to submit "all evidence known to [him]" that relates to whether he is disabled. 20 C.F.R. § 404.1512(a)(1). The claimant must submit that evidence "no later than 5 business days before the date of the scheduled hearing" before the ALJ. *Id.* §§ 404.935(a), 416.1435(a). If he misses that deadline, the Appeals Council will only consider the additional evidence if the claimant shows good cause for not submitting it timely. *Id.* § 404.970(b). Here, this evidence, as Defendant notes, is not the "typical" additional evidence, i.e. a doctor's medical opinion, evaluation, etc. Instead, Claimant's evidence is a March 11, 2020 vocational opinion from Claimant's own VE, regarding Claimant's vocational history and the RFC assigned by the ALJ. Thus, this evidence was not available before the hearing and ALJ decision. *See Jones v. Colvin*, No. 7:15-CV-00018-D, 2016 WL 3571468 at *5 (E.D.N.C. June 8, 2016), *report and recommendation adopted*, 2016 WL 3582034 (E.D.N.C. June 28, 2016) (remanding on step three, but ruling that the ALJ should also evaluate the additional evidence on remand, a vocational evaluation conducted by a certified rehabilitation counselor).

Second, the additional evidence is new. "Evidence is new if it is not duplicative or

14

cumulative." *Stanley v. Berryhill*, No. 7:17-CV-00207-FL, 2018 WL 6730552 at *7 (E.D.N.C. Nov. 13, 2018), *report and recommendation adopted*, No. 7:17-CV-207-FL, 2018 WL 6729787 (E.D.N.C. Dec. 21, 2018). The additional evidence, here, is unquestionably new, since it did not exist when the ALJ issued her decision on February 6, 2020. *See Jones*, 2016 WL 3571468 at *5.

Third, the additional evidence is arguably material. Evidence is "material if there is a 'reasonable possibility that the new evidence would have changed the outcome of the case.'" *Stanley*, 2018 WL 6730552, at *7 (quoting *Wilkins*, 953 F.2d at 96). Day's vocational opinion is arguably material because it has the potential to undermine the ALJ's VE testimony and analysis. On this point, Claimant cites *Hester v. Colvin*, No. 1:14CV751, 2016 WL 1364190 (M.D.N.C. Mar. 31, 2016), *report and recommendation adopted*, 2016 WL 5477614 at *4 (M.D.N.C. Sept. 29, 2016), which held that the ALJ failed to address evidence that contradicted the RFC and the court could not determine if the Appeals Council considered the medical examination evidence submitted after the ALJ's decision. Here, while Ms. Day's vocational evaluation is not a medical opinion, the evidence arguably could undercut the ALJ's RFC light work determination. Day indicated that Claimant could work at the sedentary level only, not light, and that Claimant would require accommodations for the use of an assistive device which would inhibit competitive employment in the jobs given by the ALJ's VE. (R. 13–14).

However, on the other hand, as the Acting Commissioner alludes to, even upon consideration of Ms. Day's opinion, the end result may not differ. Def.'s Mem. [DE-26] at 24; *see Jacobs* 2015 WL 1471256, at *9 ("the court finds that the VE sufficiently explained the apparent conflict between his testimony and the DOT, the VE's testimony constitutes substantial evidence on which the ALJ properly relied at step five, and consideration of [Claimant's consulting vocational expert's] report would not change ALJ's decision.").

15

Given that remand is appropriate for the ALJ to properly evaluate Dr. Rogers' statements, the court need not decide whether Day's opinion provides an independent basis for remand, and upon remand the ALJ should also evaluate Ms. Day's vocational opinion. *See*, *Jones*, 2016 WL 3571468, at *5.

## C. Constitutional Argument

Claimant contends that the structure of the SSA is unconstitutional because the Commissioner is the singular head of the Agency, serves a six-year term, and cannot be removed by the President except for cause, which Claimant argues violates the separation of powers and deprived Claimant of a valid administrative adjudicatory process. Pl.'s Mem. [DE-23] at 11–12 (citing *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020)); Pl.'s Resp. [DE-28] at 2–18. Defendant concedes that the removal restriction violates the separation of powers but contends that Claimant is entitled to no relief because he cannot show the required nexus between the removal restriction and the denial of his benefits claim, any constitutional violation constituted harmless error, rehearing is unwarranted under the de facto officer doctrine and the rule of necessity, and prudential considerations bar her request for rehearing. Def.'s Mem. [DE-26] at 5–19 (citing *Collins v. Yellin*, 141 S. Ct. 1761 (2021)); *see also, e. g.*, *Stephens v. Comm'r of Soc. Sec.*, 1:20-CV-00320-WCM, 2022 WL 628540 (W.D.N.C. Mar. 3, 2022) (citing *Helms v. Comm'r of Sec. Sec.*, No. 3:20-cv-589-MOC, 2021 WL 5710096 (W.D.N.C. Dec. 1, 2021)); *Stubbs v. Kijakazi*, No. 6:20-3606-MGL-KFM, 2022 WL 557479 (D.S.C. Feb. 24, 2022); *Pepper v. Kijakazi*, No. 6:20-CV-4159-CMC, 2022 WL 391577 (D.S.C. Feb. 9, 2022); *Hutchens v. Comm'r of Soc. Sec.*, No. 1:20-CV-1124, 2021 WL 5834409, at *13 (M.D.N.C. Dec. 9, 2021) (citing *Lisa Y., v. Comm'r of Soc. Sec.*, No. C21-5207-BAT, — F. Supp.3d —, 2021 WL 5177363 (W.D. Wash. November 8, 2021)), *adopted* Jan. 5, 2022; *Osborne v. Kijakazi*, No. 5:21-cv-9-MOC,

2021 WL 5890668, at *4 (W.D.N.C. December 13, 2021) (relying on *Collins* in rejecting challenge to Acting Commissioner's authority because plaintiff "offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); *Brian S. L. v. Kijakazi*, No. 1:21cv00423 (AJT/JFA), 2021 WL 6774946 (E.D.Va. Dec. 10, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397 (W.D.N.C. Oct. 27, 2021).

However, again, given that remand is required for reconsideration of the statements from Claimant's cardiologist, Dr. Rogers, the court declines to reach this constitutional question here. *See Norfolk S. Ry Co. v. City of Alexandria*, 608 F.3d 150, 156–57 (4th Cir. 2010) ("[T]he principle of constitutional avoidance set forth in *Ashwander v. Tennessee Valley Authority* requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary.") (citing *Ashwander*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("It is not the habit of the Court to decide questions of a Constitutional nature unless absolutely necessary to a decision of the case." (internal quotation marks omitted))); *but see Lisa Y.*, 2021 WL 5177363, at *1 (concluding that "[w]hile the ALJ's erroneous decision to discount Dr. Gool's opinion provides the Court a basis to avoid addressing the separation of powers argument, the Court also addresses the Constitutional issue because it is an important and recurring issue that has been raised in numerous other cases and should thus be resolved").

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-22] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-25] is DENIED, and this matter is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this Order.

17

Submitted, this the 23rd day of March, 2022.

                                          _____
                                          Robert B. Jones, Jr.
                                          United States Magistrate Judge